DEBRA ANN LIVINGSTON, *Circuit Judge*, dissenting:

I dissent for substantially the reasons set forth in Sections I, II, and III of Judge Lynch's opinion, and I join in those sections. I share in the commitment that all individuals in the workplace be treated fairly, and that individuals not be subject to workplace discrimination on the basis of their sexual orientation, just as on the basis of their "race, color, religion, sex, [and] national origin." I cannot conclude, however, as the majority does, that sexual orientation discrimination is a "subset" of sex discrimination, Maj. Op. at 20–21, 24 n.10, 37, 38, et passim, and is therefore included among the prohibited grounds of workplace discrimination listed in Title VII.[1]

The majority's efforts founder on the simple question of how a reasonable reader, competent in the language and its use, would have understood Title VII's text when it was written – on the question of its public meaning at the time of enactment. The majority acknowledges the argument "that it is not 'even remotely plausible that in 1964, when Title VII was adopted, a reasonable person competent in the English language would have understood that a law banning employment

---

[1] In relevant part, Title VII renders it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

discrimination 'because of sex' also banned discrimination because of sexual orientation.'" *Id.* at 24 (citation omitted). It does not contest the point, however, but seeks merely to justify its departure from ordinary, contemporary meaning by claiming that "[e]ven if that [is] so," its approach no more departs from the ordinary meaning of words in their contemporary context than supposedly occurred when sexual harassment and hostile work environment claims were first recognized by courts. *Id.* at 24–25. But as Judge Lynch has cogently explained, that is simply not the case. Dissenting Op. at 19–26. The majority does not discover a "plain" yet hidden meaning in Title VII, sufficiently obscure as to wholly elude every appellate court, including this one, until the Seventh Circuit's decision in *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017) (en banc), last year. Instead, it *sub silentio* abandons our usual approach to statutory interpretation. *See, e.g., Sandifer v. U.S. Steel Corp.*, – U.S. –, 134 S. Ct. 870, 876 (2014) (noting the "'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))); *Bilski v. Kappos*, 561 U.S. 593, 603 (2010) (quoting *Perrin* and applying the same canon of statutory interpretation); *Diamond v. Diehr*, 450 U.S. 175, 182 (1981) (same).

Because Sections I, II, and III of Judge Lynch's dissent are sufficient to answer the statutory question that this case presents, I do not go further to address the subject of constitutional interpretation, and do not join in Section IV. I agree with Judge Lynch, however, that constitutional and statutory interpretation should not be confused: that while courts sometimes may be called upon to play a special role in defending constitutional liberties against encroachment by *government*, in statutory interpretation, courts "are not in the business of imposing on private actors new rules that have not been embodied in legislative decision." Dissenting Op. at 65. To do so chips away at the democratic and rule-of-law principles on which our system of governance is founded – the very principles we rely on to secure the legitimacy and the efficacy of our laws, including antidiscrimination legislation.[2]

The Supreme Court said unanimously, just last Term, that the proper role of the judiciary in statutory interpretation is "to apply, not amend, the work of the People's representatives," even when reasonable people might believe that "Congress should reenter the field and alter the judgments it made in the past."

---

[2] Notably, all three states in this Circuit have prohibited workplace discrimination on the basis of sexual orientation, as have nineteen other states and the District of Columbia, all through legislation, and not judicial reinterpretation of existing prohibitions on sex discrimination. Under New York law, Zarda was thus able to present his claim that he was subject to workplace discrimination on the basis of his sexual orientation to a jury. The jury decided in favor of his former employer, Altitude Express.

*Henson v. Santander Consumer USA Inc.*, – U.S. –, 137 S. Ct. 1718, 1725–26 (2017). "[I]t is for Congress, not the courts, to write the law," *Stanard v. Olesen*, 74 S. Ct. 768, 771 (1954), and where "Congress' . . . decisions are mistaken as a matter of policy, it is for Congress to change them. We should not legislate for them[,]" *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 427 (1985) (citing *Victory Carriers, Inc v. Law*, 404 U.S. 202, 216 (1971)).

This hornbook separation-of-powers principle and the reasons behind it need not be elaborated here, for both should be well known to every law student. *See The Federalist No. 47*, at 251–52 (James Madison) (Carey & McClellan eds., 2001) (quoting Montesquieu to the effect that "were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would then be the legislator"); *see also I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983) (noting that "hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted"). Together, they explain why judges interpreting statutes do their best to discern the ordinary, contemporary, common meaning of the statute's language. This is the law that was enacted through the democratic process, and the law we are to apply.

This approach does not always yield results that satisfy the judge charged with the task of statutory interpretation. It has not done so today. But I cannot faithfully join in the majority's opinion. I agree with Judge Lynch that when Title VII was written and, indeed, today, "bias against or disapproval of those who are sexually attracted to persons of their own sex" was and is viewed "as a distinct type of prejudice," and not as a subcategory of "discrimination against either men or women on the basis of sex." Dissenting Op. at 56. Accordingly, and agreeing with him that in interpreting an act of Congress, we must "respect the choices made by Congress about which social problems to address, and how to address them," *id.* at 66, I respectfully dissent.